# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| BRENDA SMITH § | |
|     Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. |
| § | |
| § | Jury Demanded |
| ST. LUKE'S EPISCOPAL HEALTH § | |
| SYSTEM CORPORATION *et al* § | |
|     Defendant § | |

## PLAINTIFF, BRENDA SMITH'S ORIGINAL COMPLAINT
## AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Plaintiff, Brenda Smith, complaining of and about Defendants, St. Luke's Episcopal Health System Corporation and St. Luke's Episcopal Hospital, and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1.    Plaintiff, Brenda Smith ("Smith"), is a citizen of the United States and the State of Texas and resides in Montgomery County, Texas.

2.    Defendant, St. Luke's Episcopal Health System Corporation, its successors, heirs, and assigns, is a domestic nonprofit organization with its principle place of business in Houston, Texas. St. Luke's Episcopal Health Systems Corporation may be served with process by serving its registered agent, David A. Springhetti at 3100 Main Street, Suite 672, Houston, TX 77002.

3.    Defendant, St. Luke's Episcopal Hospital, its successors, heirs, and assigns, is a domestic nonprofit corporation with its principle place of business in Houston, Texas. St. Luke's Episcopal Hospital may be served with process by serving its registered agent David A. Springhetti at 3100 Main Street, Suite 672, Houston, TX 77002.

## JURISDICTION AND VENUE

4. This court has jurisdiction under the AMERICANS WITH DISABILITIES ACT, as amended, 42 U.S.C. § 12101 *et. seq* and 28 U.S.C. §§1331.

5. Jurisdiction is also proper under 28 U.S.C. §1331 and this court has jurisdiction over the lawsuit because the suit arises under the AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA), 29 U.S.C. §621 *et seq*.

6. Venue in this district is proper pursuant to 28 U.S.C. §1391(b) and (c), because this is the district in which Defendants do business and this is the district in which the unlawful conduct giving rise to the claims occurred.

## NATURE OF THE ACTION

7. This action arises under the AMERICANS WITH DISABILITIES ACT, as amended, 42 U.S.C. § 12101 *et. seq.,* and the ADA Amendments Act of 2008 and the TEXAS LABOR CODE Chapter 21.

8. This action also arises under the AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA), 29 U.S.C. §621 *et seq.*

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

9. Plaintiff timely filed a charge of disability discrimination against Defendants with the EEOC on December 6, 2010. More than 180 days has expired since Plaintiff filed her charge of discrimination with the EEOC. All conditions precedent to the filing of this lawsuit have been fulfilled. A Notice of Right to Sue was issued on February 8, 2013 and received on February 12, 2013. Smith's complaint is timely filed within 90 days of receipt of the notice which is attached as Exhibit A. A Right to Sue has been requested from the Texas Workforce Commission but has not been received.

## RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

10. Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## AGENCY, SINGLE INTEGRATED ENTERPRISE, AND JOINT EMPLOYER

11. Defendant entities have at all relevant times acted in an agency relationship, or as a single integrated enterprise, or in the alternative, as Smith's joint employers. Defendants are jointly and severally liable to Smith for her damages.

## FACTS

12. Smith was 61 years old when she was hired on March 22, 2010 as a Security Officer for St. Luke's Episcopal Hospital-The Woodlands to work at its clinic facility located at 10710 Kuykendahl Rd., The Woodlands, TX 77381.

13. The position opening and brief job description were found on the internet.

14. Smith was hired by Ron Davis, and advised by him that she would begin work at the Woodlands clinic location in the next "coming week or two."

15. When hired, Smith was not given notice of any essential functions of the job or any position description. In fact, Smith was never provided with a position description or any minimum requirements of the job until after she was fired.

16. Upon being hired, Smith was required to complete a form regarding medical issues. Smith identified that she had an arthritic right knee and was given a brief medical exam by a nurse who was a staff member at St. Luke's.

17. In the meantime Davis changed his direction and advised Smith that she would begin working at the hospital location on Highway 242. Post and shift changes happened multiple times during her employment without any explanation.

18. Smith was first assigned to the 7:00 a.m. to 3:30 p.m. shift and began monitoring the parking lot for public visibility.

19. On April 11, 2010, Smith's shift was changed to the 11:00 p.m. to 7:30 a.m. shift, purportedly on a temporary basis. Tony Pugh was her supervisor.

20. Although Smith and Pugh had numerous casual conversations regarding their "aging bodies" and how things changed, Smith in no way indicated she had any limitations which would affect her job. Smith did mention her arthritic knee to Pugh during one of their conversations.

21. Smith never reported an injury or any limitations of any of her major life's activities. Smith had told Pugh on one occasion that her knee was stiff, but she was always able to complete the duties required of her position.

22. On August 10, 2010, Smith was called to Human Resources to see the HR Manager, Mona Tucker.

23. Tucker informed Smith that she heard from Tony Pugh that she had a "bad knee" and demanded that Smith undergo functional capacity evaluation.

24. Smith asked Tucker what this evaluation entailed and Tucker responded that she did not know. Tucker gave Smith the written information and treatment authorization letter for an August 12, 2010 appointment with U.S. Healthworks Medical Group.

25. At that point, Smith advised Tucker that her right knee was injured some 30 plus years ago and asked if an x-ray would be done prior to the required functional capacity evaluation. Tucker could not tell Smith what the exam entailed and Smith did not want to risk damage to her knee. Smith wanted to ensure that an x-ray would be given showing the current condition of her knee.

26. Tucker told Smith unequivocally that there would not be any pre-evaluation x-ray.

27. Smith was not satisfied with the answers provided by Tucker, so to be on the safe side Smith called the U.S. Healthworks Medical Group clinic to get more information about the actual requirements and demands of the evaluation.

28. The U.S. Healthworks Medical Group employee Smith spoke with was unable to tell her exactly what the evaluation consisted of, but did say there were some "squats" involved.

29. The employee of U.S. Healthworks Medical Group then informed Smith that the evaluation would take 5 hours and the only medical staff who would be present would be physical therapists and aides. The employee of U.S. Healthworks Medical Group stated that no nurses or doctors would be on site.

30. After learning this information, Smith contacted Tucker via phone and informed Tucker she would not be completing this evaluation.

31. Smith only knew of one other employee, Lamar Peevie, an older gentleman, out of at least 12 security guards she worked with who was also required to take this test.

32. On August 12, 2010, Smith received a phone call from Tucker and Ms. Richardson, a nurse administrator at St. Luke's.

33. Smith told Ms. Richardson that she had called the facility and they had no idea of what the test consisted. Richardson raised her voice and was verbally abusive toward Smith and demanded that Smith complete the evaluation.

34. Smith asked about the procedure being 5 hours in duration, and Richardson stated "it is very simple, treadmill, crawling on hands and knees, bending, stooping; there are doctors and nurses there....they won't let you hurt yourself."

35. Richardson yelled all of this at Smith over the phone.

36. Smith advised Richardson and Tucker that she called the clinic and was informed there were no doctors or nurses on hand. Richardson was quite irrate and demanded that Smith complete the evaluation, stating "you better take the test."

37. Smith told her "I don't think so" and Richardson hung up on her.

38. Four days later, on August 16, 2010, Tucker told Smith via telephone that she was going to "put this in writing."

39. On August 19, 2010, Tucker called Smith off her post to come to Tucker's office. Tucker demanded that Smith respond to a letter she handed her, but it was prepared and back dated to August 16, 2010.

40. Smith had to check a box as to whether she agreed or did not agree to participate in a functional capacity evaluation. Smith checked that she would not agree to the test and was told to sign the letter, which she did.

41. Shortly after Smith signed this letter, she was told by two other employees that Tucker had stated directly to them that she intended to "get rid" of older workers.

42. On August 24, 2010, Smith was called to Human Resources again to meet with Tucker. Smith was advised that she was being terminated for "insubordination" due to her refusal to complete the evaluation.

43. During this ordeal, Smith had never been relieved of her duties, and continued to work three different shifts and a full forty hours a week. She was qualified for and could perform her job with Defendants.

44. Smith does not have a disability which limits one or more of her life activities, but was regarded by Defendants as having a disability.

45. Smith would have gladly taken the functional capacity evaluation had someone been able to articulate the requirements of the test to her, so she could seek a determination as to whether she was at risk for injury, or could have some verification as to the condition of her knee prior to the test — and some assurance that appropriate medical personnel would be present during this five hour test.

## COUNT I- DISCRIMINATION UNDER THE ADA

46. Smith hereby incorporates the preceding paragraphs 1- 45 for all purposes.

47. Smith does not have a disability, as defined by the AMERICANS WITH DISABILITIES ACT, as amended, see 42 U.S.C. §§ 12102, 12111(8), and the ADA AMENDMENTS ACT of 2008, but was regarded by Defendants as having a disability.

48. Smith was qualified to perform the essential functions of her job as a security guard, with no accommodation, and did so until she was terminated, having never requested any accommodation.

49. Defendants violated the AMERICANS WITH DISABILITIES ACT as amended and the ADA AMENDMENTS ACT of 2008 by intentionally discriminating against Smith on the basis of her perceived disability. Defendants' discriminatory acts include subjecting Smith to different terms and conditions of employment because of her perceived disability; harassing, intimidating, and retaliating against Smith because of her perceived disability; and, depriving Smith of equal employment opportunities and otherwise adversely affecting her status as an employee because of her perceived disability.

50. Defendants' perception of Smith having a disability was a determinative factor in Defendants' decision to terminate her.

51. Defendants acted with malice or reckless indifference to Smith's protected rights in violation of the AMERICANS WITH DISABILITIES ACT.

52. Smith was discriminated against by her employer in violation of the AGE DISCRIMINATION IN EMPLOYMENT ACT of 1967, 29 U.S.C. Section 621 *et.seq*., as amended by the CIVIL RIGHTS ACT of 1991 and the TEXAS LABOR CODE CHAPTER 21 on the basis of my age.

### COUNT II-DISCRIMINATION UNDER THE ADEA

53. Smith hereby incorporates paragraphs 1 through 52 by reference.

54. Defendants intentionally engaged in unlawful employment practices involving Smith because of her age and in violation of the AGE DISCRIMINATION IN EMPLOYMENT ACT of 1967, 29 U.S.C. Section 621 *et.seq*., as amended.

55. In support of her claim under the ADEA, Smith asserts:

   (a) she was within the protected age class;

   (b) she was subjected to different terms and conditions of employment because of her age; and

   (c) she was replaced by someone outside the protected class, someone younger, or was otherwise discriminated against because of her age.

56. Defendants intentionally discriminated against Plaintiff because of her age in violation of the ADEA by terminating her.

57. Defendants' conduct was an intentional and willful violation of the ADEA.

### COUNT III - DISCRIMINATION UNDER THE TEXAS LABOR CODE

58. Smith hereby incorporates paragraphs 1 through 57 by reference.

59. Defendants intentionally engaged in unlawful employment practices involving Smith because of her age and in violation of Chapter 21 of the Texas Labor Code.

60. In support of her claim under Chapter 21 of the Texas Labor Code, Smith asserts:

   (a) she was within the protected age class;

(b) she was subjected to different terms and conditions of employment because of her age; and

(c) she was replaced by someone outside the protected class, (ii) someone younger, or (iii) was otherwise terminated because of her age.

61. Defendants intentional and impermissible consideration of Plaintiff was a motivating factor in Defendants' decision to terminate her in violation of the Texas Labor Code §21.051 *et seq*.

62. Defendants' violations of the TEXAS LABOR CODE were conducted with malice and/or reckless indifference to the rights of Plaintiff.

## DAMAGES

63. As a direct and proximate result of Defendants' conduct, plaintiff suffered the following injuries and damages.

    a. Plaintiff was terminated from employment with Defendants. Although Plaintiff has diligently sought other employment, she has been unable to find and maintain a job at comparable pay. In addition, Plaintiff has incurred expenses in seeking other employment;

    b. Plaintiff seeks compensation for all past and future lost wages and benefits, plus prejudgment and postjudgment interest at the prevailing rate;

    c. Plaintiff is entitled to postjudgment interest on all sums, including attorney fees and costs awarded in this action;

    d. Plaintiff suffered physical pain, mental anguish and emotional distress in the past and future; and

    e. Plaintiff seeks liquidated damages, as allowed, by statute.

## PUNITIVE DAMAGES

64. Defendants acted with malice or reckless disregard for Smith's federal rights and Defendants are liable for and Smith seeks punitive damages under the ADA, AAADA and ADEA.

## FEES & COSTS

65. Plaintiff is entitled to an award of attorney fees and costs under the ADA and ADEA.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Brenda Smith, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; attorneys fees and costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

Law Office of Jo Miller, PLLC
505 North Main Street
The Parsonage
Conroe, TX 77301
Tel: (936) 539-4400
Fax: (936) 539-4409
jmiller@jomillerlaw.com


By:/s/ *Jo Miller*
    JO MILLER
    Texas Bar No. 00791268
    Southern District Bar No: 20385
    Attorney-in-Charge for Plaintiff,
    Brenda Smith


**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**